### The United States, Appellants, v. John Rodman, Assignee of Robert M'Hardy, Appellee.

A claim to land in East Florida, founded on a grant by Governor Kindelan, to Robert M'Hardy, dated November 8, 1814, confirmed by the Supreme Court.

The Supreme Court, in the case of the United States v. Clark, 8 Peters, 48, say " that if the validity of the grant depends upon its being in conformity with the royal order of Spain of 1790, it cannot be supported;" but immediately proceeds to show, " though the royal order is recited in the grant, that it was, in fact, founded on the meritorious consideration of the petitioner having constructed a machine of great value for sawing timber; the recital of the royal order of 1790, in this grant, is entirely immaterial, and does not affect the instrument." Held, the recital of the royal order, in this case, is quite immaterial.

The case of the United States v. Wiggins, 14 Peters, 325, which decided that certain proof of the certificate of Aguilar, Secretary of East Florida, was sufficient, cited; and the decision on that point affirmed.

The Spanish governors of Florida had, by the laws of the Indies, power to make large grants to the subjects of the crown of Spain. The royal order of Spain of 1790, applied to grants to foreigners. These large grants, before the cession of Florida to the United States, had been sanctioned for many years by the King of Spain, and the authorities representing him in Cuba, the Floridas, and Louisiana. This authority has been frequently affirmed by the Supreme Court.

An application was made to the Governor of Florida, in 1814, stating services performed by the petitioner for the government of Spain, and the intention of the petitioner to invest his means in the erection of a water saw-mill; and marking the place where the lands were situated, which were asked for. The Governor granted the land, referring to the merits and services of the applicant, and in consideration of the advantages which would result to the home and foreign trade by the use proposed to be made of the land. Held, that this was not a conditional grant; and that no evidence of the erection of a water saw-mill was required to be given to maintain its validity, or induce its confirmation.

APPEAL from the Superior Court of East Florida.

The appellee, as assignee of Robert M'Hardy, presented a petition to the judge of the Superior Court for the Eastern District of Florida, claiming a tract of land containing sixteen thousand acres, situated in that district, on the west side of the river St. Johns, at a place where there is a spring and stream of fresh water, formerly known by the name of " Old Stores."

The claim was alleged to be founded on a grant, dated No-

vember 8, 1814, by Governor Kindelan, the Spanish governor of East Florida. The claim was opposed by the United States.

The Superior Court of East Florida decided in favour of the claimant, and the United States prosecuted this appeal.

The case is fully stated in the opinion of the Court.

It was argued by Mr. Gilpin, Attorney General for the United States; Mr. Downing appeared as counsel for the appellee.

Mr. Gilpin contended that the decision of the Court below should be reversed, on the following grounds:

1st. That the evidence in the case is insufficient to prove that the alleged grant or concession was ever made.

2d. That if it be proved or admitted that the alleged grant or concession was ever made, still, that the same was not in conformity to the royal order of 29th October, 1790, by virtue of which it is declared that the concession was made.

3d. That if it be proved or admitted that the alleged grant or concession was ever made, and that it was in conformity to the royal order of 29th October, 1790, still, that the same was granted or conceded, on the condition that the claimant should build a water saw-mill on the land so conceded, which condition never has been complied with.

4th. That the concession, if ever made, being conditional, and the conditions unperformed, it was incumbent on the claimant to assign reasons sufficient for the non-performance; which he has not done.

Mr. Gilpin:—This is a claim for sixteen thousand acres of land, on the west side of the river St. Johns; founded on an alleged concession to Robert M‘Hardy, by Governor Kindelan, dated 8th November, 1814.

The Superior Court of East Florida adjudged the claim to be valid. The correctness of this decree is contested by the United States, because there is not, as they allege, competent evidence to establish the concession to M‘Hardy; and because, if the concession ever was made, a legal title to the land conceded never accrued to the grantee.

I. The original concession of Governor Kindelan never has been produced. The sole evidence of it is an alleged copy, cer-

tified by Aguilar, the Governor's secretary. The circumstances under which copies, thus certified, will be admitted as evidence of a grant, have been declared by this Court, in the cases of the United States v. Percheman, 7 Peters, 84; The United States v. Delespine, 12 Peters, 656.; and the United States v. Wiggins, 14 Peters, 348. In the first, the Court held that the original must be produced, if either party suggested its necessity; and in the second, there was direct evidence of the existence of the original. In the last case, the Court admitted the copy, without any direct evidence to that effect; but on the express ground that the presumptive testimony of the existence of the original was very strong; and also that there was a survey proved in conformity with, and referring to the original grant. It is admitted that if the evidence brings the present case within the rules established in the case of the United States v. Wiggins, the concession is proved. But is such the fact? There was no survey made until 1819, nearly five years after the grant; and it was then made by a person other than the surveyor designated in the order of survey, and at a place different from that named in the grant. The proof that the order of survey was signed by Governor Kindelan, is far from direct; the signature is identified by a single witness only, and by him with some expressions of doubt.

II. But if the making of the concessions in 1814, by Governor Kindelan is established, had a title under it valid by the Spanish law, accrued to M'Hardy on the 24th January, 1818; so as to be ratified and confirmed by the eighth article of the treaty? 6 Laws of United States, 618. 2 White's New Rec. 210. The concession is "a square of five miles" granted, as it states, "in consideration," first, "of the advantages which will result in favour of the home and foreign trade of the province;" and, secondly, "in conformity to the provisions of the royal order of 29th October, 1790, in relation to the distribution of lands to the new inhabitants." The first consideration, evidently, has allusion to the statement of M'Hardy, in his memorial, that "he intended to invest his means in the erection of a water saw-mill, in consideration of the great scarcity of lumber in the province, both in regard to the home consumption and to the purposes of commerce;" the second consideration refers, undoubtedly, to the claim to remuneration arising from his merits and services, also.

[The United States v. Rodman.]

stated in his memorial; that is, his fidelity to the government during the rebellious invasion of the province in 1812, and his loss of a crop in that year. It is admitted that the saw-mill never was commenced; and that the land never was taken possession of, occupied, or cultivated.

This grant is a mere concession; it is not a complete and absolute grant; to make it so, further acts were necessary on the part of the Spanish government and of the grantee; these were, a compliance with the provisions of the royal order of 1790, and with the promise to erect a saw-mill: both of these were conditions annexed to the grant; and neither having been complied with, the grant is not valid.

1. The royal order of 1790, 2 White's New Rec. 365, did not authorize the governor of East Florida to make such a grant as the claimant contends for. That order was issued, as it declares, for the purpose of inviting foreigners into the province; but M'Hardy was not a foreigner. It limited the quantity of land that might be granted, to a fixed number of acres, proportioned to the number of workers actually employed; M'Hardy employed no workers. An absolute grant of sixteen thousand acres to a Spanish subject, who made no settlement, could not, therefore, be valid under the authority of the royal order of 1790. This point is distinctly adjudged by this Court, in the case of the United States v. Clarke, 8 Peters, 448. There, the grant recited the royal order of 1790, and also that Clarke "had constructed, from his own ingenuity, a certain machine" of great value. This Court, passing upon the grant, said that "it was too plain for argument that, if its validity depended on its being in conformity with the royal order of 1790, it could not be supported:" and they held it to be valid only, because it did not depend upon that order, but on the other motives expressed in the grant. If the same rule be applied, as it must be, to the present case, then the claim of M'Hardy to sixteen thousand acres cannot be valid under the royal order, but must depend on the other considerations stated by Governor Kindelan.

But it is submitted that the recital, in this grant, by Governor Kindelan, of the royal order of 1790, was not superfluous or incorrect. It is the inference drawn from that recital by the claimant, which is erroneous. The grant does not purport to be

VOL. XV.—M

made "by virtue of" the royal order of 1790, which was applicable especially, if not exclusively, to foreigners; but it was made to a Spanish subject, "in conformity to the provisions" of that order; that is, according to the regulations which required settlement and cultivation by a certain number of workers. Under the power which the Governor possessed of making grants for services, he made this concession to M'Hardy for those to which he had, in his memorial, called his attention; but as the grant was large, the Governor required that he should. either comply with the provisions of the royal order, which were recited in the concession, or erect a mill which would be "favourable to the home and foreign trade of the province." Had the claimant settled the tract, and placed upon it the proper number of workers, then he would have acted in conformity to the royal order of 1790—then the grant would have been valid, because one of its conditions would have been complied with.

2. It is, however, valid, although the provisions of the royal order of 1790 were not complied with, if the other condition was executed—if the water saw-mill was erected. Was this done? It is admitted that it was not; and, to obviate the want of all evidence to that effect, it is argued that the terms of the grant do not imply that such erection is a necessary condition; and that, under the decisions of this Court, such a grant is perfect, without any such proof. That the terms of the grant imply such a condition is apparent from its face. It is stated to be made "in consideration" of the advantages that are to result from such an establishment; the allusion to the petitioner's merits is not adduced as one of "the considerations" of the grant; they are not of a character to warrant any donation, much less one of such unusual magnitude; they are more than compensated by making him the grant, subject to the provisions of the royal order of 1790, in regard to settlement and cultivation; any other grant; any possession of the land, unattended with a compliance with these provisions, was intended to be coupled with this condition of building the saw-mill, which he proposed himself. In the cases of the United States v. Kingsley, 12 Peters, 476, and of the United States v. Burgevin, 13 Peters, 85, it was distinctly held, that, where there was a condition in the grant that a saw-mill should be erected, no title accrued without proof of its having been built.

It is true that, in those cases, the condition was stated in the grant in terms more explicit than in the present case : but this cannot affect the principle established by the Court. If there be a condition in the grant itself, ascertained from its language, and evincing the intent of both parties at the time the grant was made, the particular language in which the condition is couched is immaterial. The cases of the United States *v.* Clarke, 8 Peters, 448, and of the United States *v.* Segui, 10 Peters, 306, do not conflict with these positions. In the former, the grant was not in consideration of a saw-mill to be erected ; but in consideration of the applicant having already constructed, from his own ingenuity, a peculiar mill of great value. In the case of the United States *v.* Segui, this Court did indeed hold, that where a grant was made in absolute property, they would not attach a condition, from the mere fact that the erection of a saw-mill had been stated as an inducement in the memorial ; but it is evident, from the report of that case, that this statement was merely in the memorial, and not repeated as "a consideration" by the Governor in the grant itself. In the present case it is otherwise ; this consideration appears, not merely in the memorial, but in the grant ; and besides, it is not, as Segui's was, a grant "in absolute property."

It is therefore submitted that the concession, if ever made, was conditional ; that the conditions are unperformed, and, therefore, that the grant is not valid.

Mr. Justice WAYNE delivered the opinion of the Court.

The decree of the Court below confirms the title of the appellees to a square of five miles of land, situated in the place known under the denomination of Apprecile Spring, opposite the old store of the house of Messrs. Panton and Leslie, called Hamlet.

The clair is founded upon a concession to Robert M'Hardy, dated the 8th November, 1814. The memorial for the grant, and the grant are as follows :

HIS EXCELLENCY THE GOVERNOR:

Don Roberto M'Hardy, an inhabitant of this province, with due respect represents to your excellency, that since the month

of July, 1803, when he came to it and was admitted under the protection of his Catholic Majesty, (whom may God preserve,) he flatters himself with having the honour of having been selected and preferred to others of his class for holding commissions of the government, the truth of which is well known to your excellency; and moreover, for the same reason of his fidelity in the year 1812, when said province was invaded by some rebellious inhabitants thereof, your petitioner was arrested by them and detained prisoner for the space of twenty-nine days, in consequence of which violence, he suffered the loss of all his crop, and other damages and losses to a great amount, which he does not mention, as they are well known to your excellency. In consideration of which, and your petitioner wishing to repair in some measure his said losses, he intends to invest his means in the erection of a water saw-mill, in consideration of the great scarcity of lumber in this province, both in regard to the home consumption and to the purposes of commerce; and as it is necessary for that purpose to obtain a suitable position, as is the place known under the denomination of Apprecile Spring, opposite the old store of the house of Messrs. Panton and Leslie, called Hamlet, therefore your petitioner supplicates your excellency be pleased, in consideration of the merits he has obtained, and of other circumstances in his favour, to grant him in absolute property a square of five miles in the location designated, and which is vacant; which favour he hopes to receive from the justice of your excellency.

St. Augustine, of Florida, on the eighth day of November, one thousand eight hundred and fourteen.

ROBERT M'HARDY.

### DECREE.

St. Augustine, of Florida, eighth of November, one thousand eight hundred and fourteen.

Whereas, the merits, services, and other circumstances which the interested party exposes in this representation, are well known to me, in consideration of the advantages which will result in favour of the home and foreign trade of this province, and also in conformity to the provisions of the royal order, of the

twenty-ninth of October, one thousand eight hundred and ninety, communicated to this government by the Captain General of the Island of Cuba, and of the two Floridas, in relation to the distribution of lands to the new inhabitants, I have come to the determination of granting to the petitioner, in absolute property, the square of five miles of land in the designated place, without prejudice to a better owner, and for the attainment of which, let the secretary's office issue to him a certified copy of this expedient and decree, which in all events will serve to him as a title in form. **KINDELAN.**

It is contended, on the part of the United States, that the decree should be reversed upon three grounds:

1. That the evidence in the case is insufficent to prove that the alleged grant or concession was ever made.

The evidence is a certificate from Aguilar, Secretary of the government of East Florida, the same as that to be found in United States *v.* Wiggins, 14 Peters, 345, which the Court held to be sufficient proof of the grant.

The second objection is, that if it be proved or admitted that the grant was made, still it is void; because it is not in conformity to the royal order of the 29th October, 1790, by virtue of which, it declared the concession was made. That royal order will be found in 2 White's New Rec. 365. It is contended that, under the order, grants can only be made to foreigners, and that the number of acres granted must be in proportion to workers. The argument is, professing to be made under the royal order, if the grant is not in accordance with it, it is void; and the United States *v.* Clarke, 8 Peters, 448, is cited to sustain the objection. The authority has been mistaken. The Court do say in that case, "if the validity of the grant depends upon its being in conformity with the royal order of 1790, it cannot be supported." But it immediately proceeds to show, though the royal order is recited in the grant, that it was in fact founded upon a meritorious consideration of the petitioner having constructed a machine of great value, for sawing lumber. The Court say: "We cannot think that the recital of a fact, entirely immaterial, on which fact the grant does not profess to be founded, can release an instrument making other considera-

M 2 18

tions on which it does profess to be founded, if the matter, as recited, be sufficient to authorize it. Without attempting to assign motives for the recital of that order, we are of opinion, that in this case the recital is quite immaterial, and does not affect the instrument. The real question is, whether Governor Coppenger had power to make it:" and so it must be said that the recital of the royal order in this case is quite immaterial. The petitioner for the grant, asks for it, reciting services and fidelity to the government in time of a rebellion; his imprisonment and loss of property to a great amount, in consequence of it; "all of which," he says, "are well known to your excellency." In consideration of which, he further states, that, to repair his losses, he intends to invest his means in the erection of a water saw-mill; and then asks his excellency, in consideration of his merits, and other circumstances, in his favour, to grant him, in absolute property, a square of five miles, in the place designated in his petition.

The Governor's decree, upon that petition, first recites the merits and services of the petitioner, which he says are well known to him; and then says, in conformity with the royal order of October, 1790, he grants him, in absolute property, the square of five miles. Now, if it be the fact that the Governor had the power to make a larger grant than the quantity recited in the royal order, which was applicable to a particular class of persons, foreigners; it will not be contended, because he says "in conformity to the royal order," that these words shall control a larger grant, made to one who was not a foreigner, but a subject of his Catholic majesty: particularly when it is stated, the considerations of the grant, are the merits and losses of the grantee. That the Governor had the power to make the larger grant, cannot be denied. It is to be found in the laws of the Indies, in the various regulations under which they granted lands in Florida, for more than forty years; sanctioned by the king of Spain, and the authorities representing him in Cuba, the Floridas, and Louisiana. The power of the Governor, in this respect, has been frequently affirmed by the decisions of this Court, in cases growing out of claims to land under the eighth article of the treaty with Spain.

The third objection against affirming the decree is that the

grant was made upon condition that the grantee should build a water saw-mill on the land granted, which condition has never been complied with; and that it was incumbent on the claimants to assign reasons why this condition was not performed.

A careful perusal of the memorial, will show it certainly was not the intention of the memorialist to make the building a mill the inducement to the grant, but his merits, services, imprisonment, and loss of property. When too, the Governor, in the grant, precedes his declaration of the advantages which will result in favour of the home and foreign trade, by an acknowledgment of the petitioner's merits and services; it certainly cannot be inferred from the first, that it was the sole consideration which induced the Governor to make it. If it be not so, then it cannot be said that the grant would only be perfect upon the performance of a condition precedent; because another consideration or inducement for making it is given, requiring nothing to be done by the petitioner. Indeed, from these expressions of the Governor in the grant, no condition can be inferred. They are a mere recital; and if a condition could be implied, it would be so inconsistent with an absolute grant in terms, that it could not for a moment have any weight against it. But the objection is not new in this Court. The point has been directly decided in The United States *v.* Segui, 10 Peters, 306. The claim in that case was founded upon a grant of sixteen thousand acres, in consideration of services to the Spanish government, and for erecting machinery for sawing timber. The Court say, "It has been suggested by the Attorney General, that though there was no express condition in the grant, one was implied from the consideration in part being the erection of a saw-mill. But we cannot attach any condition to a grant of absolute property, in the whole quantity. It was exclusively for the Governor to judge of the conditions to be imposed on his grant. He appears to have considered the services of the appellee a sufficient consideration, and made the grant absolute."

The decree of the Court below is affirmed. But as the Court rejected the survey given in evidence in this case, as it should have done; this Court will direct a survey to be made at the place designated in the decree, for the number of acres decreed, without prejudice to the rights of third parties.

[The United States *v.* Rodman.]

This cause came on to be heard on the transcript of the record from the Superior Court for the District of East Florida, and was argued by counsel. On consideration whereof, it is adjudged and decreed by this Court, that the decree of the said Superior Court, in this cause, so far as it declares the claim of the petitioners to be valid, be, and the same is hereby, affirmed in all respects; and that a survey be made of the lands contained in the said concession, according to the terms thereof, for the number of acres, and at the place therein designated; provided it does not interfere with the rights of third parties. And it is further ordered by the Court, that a mandate be issued to the surveyor of public lands, directing him to do and cause to be done, all the acts and things enjoined on him by law, and as required by the opinion and decree of this Court in this case; and that this case be remanded to the said Superior Court, for further proceedings to be had therein, in conformity to this decree, and the opinion of this Court, which must be annexed to the mandate.